1  Bruce R. Babcock     085878
   4808 Santa Monica Ave.
2  San Diego, CA 92017
   Telephone: (619) 222-2661
3
   Attorney for Debtor
4  Twins Special, LLC

5  Dean T. Kirby, Jr.     090114
   Roberta S. Robinson 099035
6  KIRBY & McGUINN, A P.C.
   707 Broadway, Suite 1750
7  San Diego, California 92101-5393
   Telephone:  (619) 685-4000
8  Facsimile:  (619) 685-4004

9  Attorneys for Creditors Nicholas Mechling
   and Christopher Mechling

10                 UNITED STATES BANKRUPTCY COURT

11                 SOUTHERN DISTRICT OF CALIFORNIA

12

13                                   Case No.     20-01230-CL11
      In re                          Chapter 11
14
      TWINS SPECIAL, LLC             FIRST AMENDED
15                                   JOINT PLAN OF REORGANIZATION
                          Debtor     DATED JULY 15, 2021
16

17

18
             Twins Special, LLC, Debtor in Possession; together with secured creditors
19
   Nicholas Mechling and Christopher Mechling, propose the following First Amended
20
   Joint Plan of Reorganization Dated July 15, 2021 (as amended from time to time, this
21
   "Plan").
22

23

24

                                      1

# <u>TABLE OF CONTENTS</u>

1.   **DEFINITIONS** ................................................................ 1

2.   **CLASSIFICATION AND TREATMENT OF CLAIMS** ............................. 6

    2.1   Class 1 Mechling Secured Claim ................................... 6

    2.2   Class 2 Pouliot Judgment Claim .................................. 7

    2.3   Class 3 General Unsecured Claim ................................. 8

    2,4   Class 4 Equity Interests ........................................ 9

3.   **DESIGNATION AND TREATMENT OF UNCLASSIFIED CLAIMS** ................. 9

    3.1   Administrative Claims ........................................... 9

    3.2   Priority Tax Claims ............................................ 10

    3.3   Bar Date for Unclassified Claims ............................... 10

4.   **IMPLEMENTATION OF THE PLAN** ...................................... 11

    4.1   Funding From Intellectual Property Proceeds .................... 11

    4.2   Funding From Subordinated Loans ................................ 11

    4.3   Payments on Account of Shared Claims ........................... 12

    4.4   Management ..................................................... 12

    4.5   Post-Confirmation Employment of Professionals .................. 12

    4.6   Compliance with Requirements of United States Trustee ......... 13

    4.7   Final Decree ................................................... 13

5.   **DISPUTED CLAIMS** ................................................. 13

    5.1   The Claims Reserve ............................................. 13

    5.2   Claim Objection Bar Date ....................................... 14

6.   **EXECUTORY CONTRACTS** ............................................. 14

7.   **EFFECT OF CONFIRMATION** .......................................... 15

    7.1   Binding Effect of the Plan ..................................... 15

    7.2   Discharge

    7.3   Re-Vesting of Property ......................................... 15

    7.4   Causes of Action ............................................... 16

    7.5   Preservation of Creditor Remedies Relating to Mechling Secured Claims ............................ 16

i

**8.**    **POST-CONFIRMATION JURISDICTION** ................................................ 16

**9.**    **GENERAL PROVISIONS** ............................................................... 17

JOINT PLAN DATED JULY 15. 2021

**1.    DEFINITIONS**

The following terms when used in this Plan shall have the meanings set forth below:

1.1    <u>Administrative Claim</u> means any cost or expense of administration of the Bankruptcy Estate that is entitled to priority in accordance with 11 U.S.C. §§ 503(b) and 507(a)(1), including, without limitation: any actual and necessary expenses of preserving the Debtor's estate and of managing the Debtor's business from and after the Petition Date to and including the Effective Date, including but not limited to, reimbursement of expenses incurred or paid for the benefit of the Debtor, all allowances of compensation and reimbursement of costs and expenses to professionals, as approved by a Final Order, and any fees or charges assessed against the Debtor's estate under 28 U.SC. §1930.

1.2    <u>Allowed Claim</u> means any Claim, in whole or part, (i) proof of which was timely and properly filed with the Bankruptcy Court, deemed filed under applicable law or by reason of an order of the Bankruptcy Court and as to which no objection has been timely filed or, otherwise, (ii) a Claim which has been or hereafter is listed by the Debtor on its schedules filed under 11 U.S.C § 521(1) as liquidated in amount and not disputed or contingent.

1.3    <u>Allowed Equity Interest</u> means any Equity Interest, in whole or part, (i) proof of which was timely and properly filed with the Bankruptcy Court, deemed filed under applicable law or by reason of an order of the Bankruptcy Court and as to which no objection has been timely filed or, otherwise, (ii) an Equity Interest which has been or hereafter is listed by the Debtor on its schedules filed under 11 U.S.C § 521(1) as not disputed or contingent.

1

1    1.4    Avalanche means Avalanche Company, LLC, the debtor in a related

2  Chapter 11 bankruptcy case, No. 20-01229-CL11 in the United States Bankruptcy

3  Court, Southern District of California.

4    1.5    The Avalanche Case means the bankruptcy case commenced on behalf of

5  Avalanche as Case No. 20-01229-CL11 in the United States Bankruptcy Court,

6  Southern District of California.

7    1.6    This Bankruptcy Case means only the above-captioned bankruptcy case,

8  No. 20-1230-CL11, commenced on behalf of the Debtor, Twins Special LLC.

9    1.7    Bankruptcy Court means the United States Bankruptcy Court for the

10  Southern District of California, or the United States District Court for the Southern

11  District of California, if the reference of this Bankruptcy Case to the Bankruptcy

12  Court is withdrawn.

13    1.8    Bankruptcy Court Order means an order of the Bankruptcy Court, signed

14  by a United States Bankruptcy Judge and entered on the docket of This Bankruptcy

15  Case, whether or not that order is subject to an appeal or a motion for reconsideration

16  or amendment.

17    1.9    Bankruptcy Estate means the estate referred to in 11 U.S.C. §541, and

18  includes all property of the Debtor, including property owned or acquired before or

19  after the Petition Date.

20    1.10    Bar Date means a deadline established by this Plan and/or by a

21  Bankruptcy Court Order, for taking an action in this Bankruptcy Case, such as filing a

22  proof of claim, or objecting to a Claim, or filing an application for professional

23  compensation.

24

JOINT PLAN DATED JULY 15. 2021

1.11    Claim means any right (a) to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.12    Claims Objection Bar Date means the deadline for filing an objection to a Claim with the Bankruptcy Court.

1.13    Confirmation Order means a Bankruptcy Court Order confirming this Plan. The entry of a Confirmation Order puts the Plan into effect.

1.14    Creditor means the holder of a Claim that arose on or before the Petition Date, or which is provided for by 11 U.S.C. § 502 subdivisions (g), (h) or (i).

1.15    Debtor means Twins Special, LLC

1.16    Debtor in Possession means Twins Special, LLC in its fiduciary capacity on and after the Petition Date, until the Effective Date.

1.17    Disputed Claim means a Claim: (a) which has been listed in the Debtor's Schedules as disputed, contingent or unliquidated, unless a proof of Claim is filed with respect thereto; (b) as to which a proof of Claim is filed which does not assert a Claim for a fixed, liquidated sum, or (c) to which an objection has been filed which is neither the subject of a Final Order nor has been withdrawn.

1.18    Effective Date means the date which is ten court days after the date of entry of the Confirmation Order.

JOINT PLAN DATED JULY 15. 2021

1.19   Equity Interest means a membership interest in the Debtor, a limited liability company.

1.20   Executory Contract means a contract, including a lease, to which the 11 U.S.C. § 365 applies.

1.21   Fighting Spirit Sublicense means a sublicense granted by the Mechlings to Fighting Spirit, LLC, as to the Intellectual Property subject to the Mechling License.

1.22   Final Order means any court order which is subject to appeal and as to which:  (a) the time for an appeal has expired and no appeal has been timely filed; or (b) any appeal that has been taken has been finally determined or dismissed and the time for any further appeal has expired.

1.23   Impaired The effect on a Claim or Interest as defined in 11 U.S.C. §1124. Generally, Impaired means that the legal rights associated with the Claim are adversely affected.

1.24   Intellectual Property means all patents and trademarks and other intellectual property owned by the Debtor, including trademarks relating to the "Twins Special" and "King Professional" brands.

1.25   Intellectual Property Proceeds means all net income actually received in cash (and not merely realized for purposes of accounting or income taxation) by the Mechlings which net income was generated by the use, enforcement or sublicensing of the Intellectual Property. The term shall have the same meaning as when it was used in the Mechling License.

1.26   Mechlings means Nicholas and Christopher Mechling or their successor(s) in interest.

1.27   <u>Mechling License</u> means the License Agreement, dated as of January 1, 2017, by means of which the Debtor granted to the Mechlings an exclusive license to use, enforce and sublicense the Intellectual Property.

1.28   <u>Mechling Secured Claim</u> means all Claims of the Mechlings which are secured, or alleged to be secured, by property of the bankruptcy estate or of the Debtors.

1.29   <u>Paid in Full</u> means payment in cash of the full amount of any Allowed Claim, including interest thereon if interest is specifically provided for by the Plan.

1.30   <u>Petition Date</u> means March 3, 2020, the date on which the Debtor filed its Chapter 11 petition, commencing This Bankruptcy Case.

1.31   <u>Plan Payment</u> means any payment required to be made under the Plan, including any prepayments which are permitted.

1.32   <u>Pouliot Judgment Claim</u> means the claim based upon the Judgment assigned to Simon Pouliot, evidenced by the proof of claim filed in this Bankruptcy Case and designated as Claim No. 3.

1.33   <u>Pre-Petition</u> means the period of time prior to the Petition Date.

1.34   <u>Present Value</u> means the value, as of the Effective Date, of a future Plan Payment or stream of Plan Payments, given a specified rate of return or "discount rate." Under the Plan, Present Value shall be computed using a discount rate of 3%.

1.35   <u>Priority Tax Claim</u> means any claim of a governmental unit entitled to priority pursuant to 11 U.S.C. §507(a)(8).

1.36   <u>Pro Rata</u> means proportionately, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the consideration distributed

5

1    on account of all Allowed Claims in that Class is the same as the ratio of such

2    Allowed Claim to all Allowed Claims in the Class.

3        1.37    <u>Reorganized Debtor</u> means the Debtor from and after the Effective Date.

4        1.38    <u>Secured Claim</u> means any Claim secured by a lien on, security interest in,

5    or charge against property of the Bankruptcy Estate or that is subject to setoff under

6    11 U.S.C. §553, to the extent of the value of the Creditor's interest in such property,

7    or to the extent of the amount subject to setoff, as determined pursuant to 11 U.S.C.

8    §506(a).

9        1.39    <u>Shared Claim</u> means any claim which is Allowed in both This

10   Bankruptcy Case and in the Avalanche Case.

11   **2.    CLASSIFICATION AND TREATMENT OF CLAIMS**

12       2.1    <u>Class 1 – Mechling Secured Claim</u>

13       Class 1 consists of the Allowed Secured Claim of the Mechlings. Class 1 is

14   Impaired. The Mechlings, as co-proponents of the Plan, are deemed to have consented

15   to the Plan and shall not be required to vote to accept or reject the Plan. The Class 1

16   Allowed Claim shall continue to bear interest at the contract rate. The Class 1

17   Allowed Claim shall be secured and perfected continuously and without interruption

18   by the existing Pre- Petition personal property security agreement in effect on the

19   Petition Date.

20       As required under the Mechling License, all Intellectual Property Proceeds

21   received by the Mechlings shall be offset against, and reduce the balance of, the

22   Allowed Class 1 Claim, except those Intellectual Property Proceeds which are

23   contributed by the Mechlings to the Debtor or Avalanche to make Plan Payments. No

24

payment shall be made on account of the Class 1 Allowed Claim until all Allowed Claims are Paid in Full.

2.2 <u>Class 2 – Pouliot Judgment Claim</u>

Class 2 consists of the Pouliot Judgment Claim. Class 2 is Impaired. The single member of Class 2 is entitled vote to accept or reject the Plan. The Class 2 Claim is Allowed in the liquidated amount of $141,588.47. The extent of the judicial lien securing the Pouliot Judgment Claim is subject to dispute. However, the Class 2 Allowed Claim shall be treated as fully secured for purposes of priority and distribution under the Plan. Mr. Pouliot will retain under the Plan all of his judicial lien rights to the extent that they existed on the Petition Date.

The Class 2 Allowed Claim shall bear interest at 3% per annum from and after the Effective Date, and shall be paid in 48 monthly installments. The first such installment shall be due on the later of: (i) April 1, 2022 or (ii) on the first day of the second full month after the Effective Date. The total installments shall have a Present Value, amortized at 3% per annum, equal to the amount of the Class 2 Allowed Claim as of the Effective Date. The installments are graduated in amount, with smaller installments due during the first year of Plan Payments, and increasing during the second, third and fourth years. Attached as Exhibit 1 is a schedule showing the amount of the monthly installments to be paid to Class 2.

The Class 2 Allowed Claim is potentially subject to offset for damages allegedly caused by acts of Mr. Pouliot which took place, or were discovered, after the Petition Date. In the event that the Reorganized Debtor commences an action to recover damages against Mr. Pouliot, then the Class 2 Claim shall be a Disputed Claim by reason of a potential offset. Plan Payments which become due from and

7

1   after the date of commencement of that action shall be sequestered in the Claims

2   Reserve provided for in Article 5 of this Plan, to be released at such time as the action

3   is dismissed or resolved by final judgment or order.

4        The Reorganized Debtor is permitted to prepay all or a portion of the Class 2

5   Allowed Claim at any time, notwithstanding that any other Allowed Claim has at that

6   time not been Paid in Full.

7        Upon receipt of Payment in Full of the Allowed Class 2 Claim, the holder of

8   the Class 2 Claim shall execute, acknowledge and deliver to the Reorganized Debtor,

9   within ten business days of receipt of a written request therefor an Acknowledgment

10  of Full Satisfaction of Judgment.

11        2.3    Class 3 - General Unsecured Claims

12        Class 3 consists of all general unsecured claims. Class 3 is Impaired. Members

13  of Class 3 are entitled to vote to accept or reject the Plan. None of the Class 3 Claims

14  are Disputed.

15        The Class 3 Allowed Claims shall bear interest at 3% per annum from and after

16  the Effective Date, and shall be paid in 48 monthly installments. The first such

17  installment shall be due on the later of: (i) April 1, 2022 or (ii) on the first day of the

18  second full month after the Effective Date. The total installments shall have a Present

19  Value, amortized at 3% per annum, equal to the amount of the Class 3 Allowed

20  Claims as of the Effective Date. The installments are graduated in amount, with

21  smaller installments due during the first year of Plan Payments, and increasing during

22  the second, third and fourth years. Attached as Exhibit 1 is a schedule showing the

23  amount of the monthly installments to be paid to Class 3.

24

JOINT PLAN DATED JULY 15. 2021

Notwithstanding any other provision set forth in this section, no payment shall be made on account of a Class 3 Allowed Claim unless all Plan Payments owing to the Class 2 Creditor, which first became due on or before the date on which the date on which the subject Class 3 payment is to be made, have been made.

The Reorganized Debtor is permitted to prepay all or a portion of the Class 3 Allowed Claims at any time and from time to time, but only if all Unclassified Claims, and the Class 2 Claim, have been Paid in Full.

2.4    Class 4 – Equity Interests

Class 4 consists of the Equity Interests of the Mechlings in the Debtor. Class 4 is Unimpaired. The Mechlings shall retain their equity interests in the Debtor. As co-proponents of the Plan, and because their Interests are Unimpaired, the Mechlings are deemed to have consented to the Plan and they shall not be required to vote.

3.    DESIGNATION AND TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with Bankruptcy Code section 1123(a)(1), the following Claims are unclassified. The following categories of unclassified Allowed Claims are subject to treatment as follows:

3.1    Administrative Claims.

Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment, all Administrative Claims shall be Paid in Full on the later of the Effective Date or the entry of a Bankruptcy Court Order approving such Claim; provided, however, that Administrative Claims that represent expenses, debts, or liabilities incurred by the Debtor in the ordinary course of business from and after the Petition Date shall be assumed and paid in the ordinary course of administration of

9

1    the Debtor's affairs in accordance with the terms and conditions of any agreements

2    relating thereto.

3        3.2    Priority Tax Claims.

4        Except to the extent that the holder of a particular Allowed Priority Tax Claim

5    has agreed to different treatment of its Claim, the holder of an Allowed Priority Tax

6    Claim will receive on account of its Claim deferred cash installments not to extend

7    beyond five years after the Effective Date so that the payments provide the holder of

8    the Allowed Priority Tax Claim with an amount equal to the Present Value of the

9    Allowed Priority Tax Claim.

10        The payment of Allowed Priority Tax Claims shall be made in equal semi-

11    annual installments with the first installment due on the first day of the sixth full

12    months after the Effective Date, computed such that the present value of the

13    payments, if made over the five year period, would equal the Present Value of the

14    Claims. Provided however that the remaining balance of any Allowed Priority Tax

15    Claim shall be Paid in Full no later than the third anniversary of the Effective Date. If

16    a Disputed Priority Tax Claim later becomes an Allowed Priority Tax Claim, then the

17    first installment shall be due 30 calendar days after the date on which the order

18    allowing such Priority Tax Claim, or portion thereof, becomes a Final Order. The

19    Reorganized Debtor may pay any Allowed Priority Tax Claim, or any remaining

20    balance of such Allowed Priority Tax Claim, in full, at any time on or after the

21    Effective Date, without premium or penalty.

22        3.3    Bar Date for Administrative Claims

23        The Confirmation Order shall include a provision establishing a Bar Date for

24    the filing of proofs of claim in relation to administrative claims. The Confirmation

10

1  Order shall also include a provision establishing a Bar Date for the submission of

2  applications for compensation and reimbursement of expenses of professionals

3  employed by the Debtor in Possession.

4  **4.      IMPLEMENTATION OF THE PLAN**

5       4.1    Funding from Intellectual Property Proceeds

6       Before each Plan Payment becomes due, the Mechlings shall deposit to the

7  account of the Reorganized Debtor funds sufficient to make each Plan Payment. The

8  Mechlings anticipate that the source of these deposits shall be Intellectual Property

9  Proceeds. Notwithstanding any provision of the Mechling License Agreement,

10  Intellectual Property Proceeds received by the Mechlings will not, to the extent they

11  are paid to the Reorganized Debtor to fund the Plan, be offset against or otherwise

12  reduce the balance of the Class 1 Claim.

13       4.2    Funding From Subordinated Loans

14       Only to the extent that the Intellectual Property Proceeds received by the

15  Mechlings is insufficient to fund the Plan Payments, the Mechlings may, but are not

16  required to, deposit to the account of the Reorganized Debtor funds sufficient to make

17  the balance of each Plan Payment, before that Plan Payment becomes due. Each

18  advance of funds required to be so deposited by the Mechlings shall constitute a loan

19  to the Reorganized Debtor. Such loan(s) may be on any terms agreed to by the

20  Mechlings and the Reorganized Debtor. Provided, however, that the Reorganized

21  Debtor may not make any payment on account of any such loan(s), and the Mechlings

22  may not exercise any default remedies with respect to such loan(s), until all Allowed

23  Claims provided for by the Plan are Paid In Full.

24

1         4.3    <u>Payments on Account of Shared Claims</u>. To the extent that payments to a

2    particular Creditor made by the reorganized debtor in the Avalanche Case is on

3    account of a Shared Claim, the amount of that payment shall be credited against the

4    Plan Payment which would otherwise be due from the Debtor to that Creditor. The

5    Mechlings shall have sole discretion as to which Debtor entity shall be funded so as to

6    make payments which are, in the Aggregate, sufficient to amortize the Claims as

7    provided for in this Plan. In no event shall the insufficiency of funds in Avalanche

8    operate to reduce the obligation of the Reorganized Debtor to make the full amount of

9    the Plan Payments according to the schedule provided for under this Plan.

10         4.4    <u>Management</u>.

11         The Reorganized Debtor shall be managed by the Mechlings, who shall sign all

12    quarterly reports required to be made under the Plan. The Mechlings shall receive no

13    compensation from the Bankruptcy Estate or from the Reorganized Debtor for their

14    management of the Debtor in Possession, or for management of the Reorganized

15    Debtor, until all Claims provided for by the Plan are Paid in Full.

16         4.5    <u>Post- Confirmation Employment of Professionals</u>.

17         The Reorganized Debtor may, after the Effective Date and without a Court

18    order, employ attorneys, accountants and other professionals as are reasonably

19    necessary, in order to among other things: (i) represent the Reorganized Debtor in any

20    court proceedings, including proceedings in the Bankruptcy Court; (ii) assist in

21    facilitating the generation of Intellectual Property Proceeds which fund the Plan

22    Payments; (iii) prepare tax returns; and (iv) assist in preparing the quarterly reports

23    required by the Plan.  Such professionals may be compensated by the Reorganized

24    Debtor for services performed after the Effective Date without a Court Order.

JOINT PLAN DATED JULY 15. 2021

1    Provided however that no Plan Payment shall be reduced or deferred by reason of the

2    need to compensate attorneys, accountants or other professionals.

3          4.6    <u>Compliance with the Requirements of the United States Trustee</u>.

4          The Reorganized Debtor shall comply with all requirements of the United

5    States Trustee, including the submission of quarterly reports and the payment of

6    quarterly fees, until the entry of a Final Decree.

7          4.7    <u>Final Decree</u>

8          The Plan shall be deemed to have been substantially consummated within the

9    meaning of 11 U.S.C. §1101(2) when all of the following conditions have been

10    satisfied:

11              4.7.1  At least six months have passed following the Effective Date; and

12              4.7.2  All reporting requirements have been met and all fees owing to the

13              United States Trustee have been paid.

14    **5.    DISPUTED CLAIMS**

15          5.1    <u>The Claims Reserve</u>

16          In the event that a Claim is presented prior to the Effective Date which is a

17    Disputed Claim which would, if allowed, have equal or greater priority than that

18    accorded to Class 3, then a Claims Reserve shall be established. If so required, the

19    Reorganized Debtor shall open an interest-bearing, federally-insured deposit account

20    and designate such account as the Claims Reserve.  Such account shall be used solely

21    for deposit of funds on account of Disputed Claims.  No other funds shall be deposited

22    into such account, and withdrawals shall be made therefrom only in accordance with

23    this Plan, the Confirmation Order and/or any Final Order resolving a Disputed Claim.

24

1    When any Plan Payment is required to be to be made, the Reorganized Debtor

2 shall deposit into the Claims Reserve any amount that would be distributed to the

3 holder of a Disputed Claim if it were an Allowed Claim.  Such amounts shall be

4 retained in the Claims Reserve, until any objection to the Disputed Claim is resolved

5 by a Final Order.

6    Provided however that the Debtor, or the Reorganized Debtor, may apply to the

7 Bankruptcy Court for an order estimating any portion of a Disputed Claim for

8 purposes of the requirement for a deposit to the Claims Reserve.

9    At such time as a Disputed Claim is fully resolved by a Final Order, the funds

10 held in the Claims Reserve on account of that Claim shall be: (i) distributed in order to

11 bring current all Plan Payments owing on account of the Allowed Claim, and (ii) any

12 balance shall be distributed in order to pre-pay other Allowed Claims, but only in the

13 priority allowed under the Plan.

14    5.2    Claim Objection Bar Date

15    The Confirmation Order shall set a Bar Date by which any objection to a

16 Disputed Claim must be filed. Such Bar Date shall not be later than 120 days after the

17 Effective Date.

18 **6.    EXECUTORY CONTRACTS**

19    Except as provided elsewhere in this paragraph, all Executory Contracts to

20 which the Debtor was a party on the Petition Date, including the Mechling License,

21 and the Fighting Spirit Sublicense, shall be deemed to have been assumed upon the

22 Effective Date, without the necessity of any additional cure of defaults or further

23 assurance of future performance.

24

14

**7.    EFFECT OF CONFIRMATION**

7.1    <u>Binding Effect of the Plan</u>. The provisions of the Plan shall bind the Reorganized Debtor, all Creditors and all Equity Interest holders, and there assignees and successors in interest, whether or not the Claim or Interest of such Creditor or Equity Interest holder is Impaired under the plan and whether or not such Creditor or Equity Interest holder has accepted the Plan.

7.2    <u>Discharge</u>. Upon the Effective Date, the Debtor and the Reorganized Debtor shall be discharged from all debts that arose or are treated under the Bankruptcy Code as if they had arisen, at any time before confirmation of the Plan to the extent specified in Bankruptcy Code section 1141. The discharge shall be effective as to each debt, regardless of whether a proof of claim therefor is filed or deemed filed, whether the Claim is an Allowed Claim, or whether the Creditor accepts the Plan. Upon the Effective Date, any defaults by the Debtor under any creditor's agreement with the Debtor shall be deemed cured, any notice of default or sale recorded by any creditor prior to the Effective Date, including all enforcement proceedings under the Pouliot Judgment, shall be deemed null, void and of no further force or effect.

7.3    <u>Re-Vesting of Property</u>. All property of the Bankruptcy Estate shall be vested in the Reorganized Debtor on the Effective Date, free and clear of all claims and interests which are not expressly and specifically provided for under the Plan. Specifically, as provided for in the Plan, the security interest of the Mechlings, and any judicial lien securing the Pouliot Judgment, shall continue in effect until the Allowed Claims secured by those liens are Paid in Full.

JOINT PLAN DATED JULY 15. 2021

7.4     <u>Causes of Action</u>. Property which shall re-vest in the Reorganized Debtor includes all claims and causes of action belonging to either the Debtor or the Reorganized Debtor on the Effective Date. These include, without implied limitation claims against the Thai Factory, infringement claims against other parties, and any claim against Simon Pouliot based upon, without implied limitation, interference with economic relationship and breach of a Non-Disclosure Agreement.

7.5     <u>Preservation of Creditor Remedies Relating to Mechling Secured Claims</u>. Notwithstanding anything else in this Plan: In the event of a default under the Plan consisting of an uncured default in payment to any Creditor, such Creditor shall retain, in addition to all other remedies available to enforce the Plan, the right to object to the validity, priority and amount of the Mechling Secured Claims by any legally available means and in any Court of competent jurisdiction. All defenses to any such objection which are based on limitations, laches or other delay and which have not expired on or before the Petition Date shall be tolled as of the Petition Date and shall extend, as to all such Creditors, until their Claims are Paid in Full.

**8.     POST CONFIRMATION JURISDICTION**

Except as provided herein, from and after the Confirmation Date, the Court shall retain jurisdiction, to the extent allowed under applicable law, for the following purposes:

8.1     To hear and determine any and all objections to the allowance of a Claim, actions to equitably subordinate or recharacterize a Claim, or any controversy as to the classification of a Claim in a particular Class under the Plan;

8.2     To interpret and enforce the Plan;

8.3     To adjudicate objections to Claims;

16

8.4     To hear all applications filed by professionals for compensation and reimbursement of expenses for services performed before the Effective Date;

8.5     To enter and implement such orders as may be appropriate in the event confirmation is for any reason stayed, reversed, revoked, modified or vacated;

8.6     To modify the Plan to the extent permitted by law and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

8.7     To enter a final decree and close the Bankruptcy Case.

**9.      GENERAL PROVISIONS**

9.1     <u>Avalanche Case Plan Confirmation</u>. As a condition precedent for the benefit of the Debtor and Reorganized Debtor only, the effectiveness of this Plan is contingent upon the entry of an order confirming a plan in the Avalanche Case.

9.2     <u>Notices</u>.

All notices, demands, or other communications given in relation to this Agreement shall be in writing and may be personally delivered to the recipient or transmitted via one or more of the following means:  (i) United States First Class, Priority or Certified Mail, postage prepaid;  (ii) overnight courier; or  (iii) email. There shall be no presumption of receipt of any notice which is sent only by United States First Class or Priority Mail. Each transmission shall be to the most recent address (for the selected mode of transmission) known to the sender, and to the mailing addresses and email address(es) for the recipient, if any, set forth below:

JOINT PLAN DATED JULY 15. 2021

| | | |
|---|---|---|
| 1 | If to the Debtor: | Twins Special, LLC |
| 2 | | 2907 Shelter Island Dr. Ste 105-701<br>San Diego, CA 92016<br>mechling@gmail.com |
| 3 | | |
| 4 | With a copy to: | Bruce Babcock<br>Law Office of Bruce R. Babcock |
| 5 | | 4808 Santa Monica Ave.<br>San Diego, CA 92017<br>brbab@hotmail.com |
| 6 | | |
| 7 | If to the Mechlings: | Christopher D. Mechling<br>Nicholas D. Mechling |
| 8 | | 2907 Shelter Island Dr. Ste 105-701<br>San Diego, CA 92016<br>mechling@gmail.com |
| 9 | | |
| 10 | With a copy to: | Dean T. Kirby, Jr.<br>Kirby & McGuinn, A P.C. |
| 11 | | 707 Broadway, Suite 1750<br>San Diego, CA 92101<br>dkirby@kirbymac.com |
| 12 | | |

13 or to such other address or to such other person as any party to this Agreement may

14 designate in writing to the other(s) for such purposes in the manner set forth in this

15 Article.

16       9.3    Severability.

17       Should any term or provision in the Plan be determined to be unenforceable,

18 such determination shall in no way limit or affect the enforceability and operative

19 effect of any other term or provision of the Plan; provided, however, that this

20 provision shall not be applied or interpreted so as to defeat the primary purpose of this

21 Plan, to wit: the restructuring of the Debtor's obligations to its Creditors on the

22 material terms and according to the treatment afforded to their Claims under the Plan.

23

24

JOINT PLAN DATED JULY 15. 2021

1    9.4    Governing Law

2    Except to the extent that federal law bankruptcy law is applicable, the rights

3  and obligations arising under the Plan and any documents, agreements and

4  instruments executed in connection with the Plan shall be governed by, and construed

5  and enforced in accordance with, the laws of the State of California.

6    9.5    Successors and Assigns

7    The rights and obligations of any entity named or referred to in the Plan shall be

8  binding upon, and shall inure to the benefit of, the successors and assigns of such

9  entity.

10                                             TWINS SPECIAL, LLC
                                              A California limited liability
11                                            company

12
                                              By: /s/ Christopher D. Mechling
13                                            Christopher D. Mechling
                                              Managing Member
14

15
    /s/ Christopher D. Mechling                /s/ Nicholas D. Mechling
16  CHRISTOPHER D. MECHLING                     NICHOLAS D. MECHLING

17

18  By:   /s/ Bruce R. Babcock
    BRUCE R. BABCOCK
19  Attorney for Debtor
    Twins Special, LLC
20

21  KIRBY & McGUINN, A P.C.

22
    By:   /s/ Dean T. Kirby, Jr.
23  Dean T. Kirby, Jr.
    Attorneys for Christopher Meching
24  And Nicholas Mechling

JOINT PLAN DATED JULY 15. 2021

## CLASS 2 (POULIOT JUDGMENT) SHARED PLAN PAYMENTS

| Class Total | Monthly Payment 1-12 Months | Monthly Payment 13-24 Months | Monthly Payment 25-36 Months | Monthly Payment 27-48 Months | Total Payments [PV =141,588.47] |
|---|---|---|---|---|---|
| $141,588.47 | 1,250.00 | 2,200.00 | 3,700.00 | 5,603.51 | 153,042.12 |

## CLASS 3 (GENERAL UNSECURED) SHARED PLAN PAYMENTS

| Class Total (Shared) | Monthly Payment 1-12 Months | Monthly Payment 13-24 Months | Monthly Payment 25-36 Months | Monthly Payment 27-48 Months | Total Payments [PV =743,567.00] |
|---|---|---|---|---|---|
| $743,567.00 | 7,800.00 | 13,700.00 | 19,500.00 | 25,725.58 | 800,706.96 |

## In re TWINS SPECIAL, LLC -- CLASS 3 (GENERAL UNSECURED) UNSHARED PLAN PAYMENTS

| Class Total (Unshared) | Monthly Payment 1-12 Months | Monthly Payment 13-24 Months | Monthly Payment 25-36 Months | Monthly Payment 27-48 Months | Total Payments [PV =138,891.41] |
|---|---|---|---|---|---|
| $138,891.41 | 1,200.00 | 2,150.00 | 3,600.00 | 5,564.44 | 150,173.28 |

## In re AVALANCHE COMPANY, LLC – CLASS 3 (GENERAL UNSECURED) UNSHARED PLAN PAYMENTS

| Class Total (Unshared) | Monthly Payment 1-12 Months | Monthly Payment 13-24 Months | Monthly Payment 25-36 Months | Monthly Payment 27-48 Months | Total Payments [PV =471.47] |
|---|---|---|---|---|---|
| $471.47 | $471.47 (1 month) | | | | 471.47 |

Exhibit 1 Page 1 of 1